UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIR B.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER et al.,<br><br>Respondents. | No. 1:26-cv-05697-TLN-SCR<br><br>A# 220-074-617<br><br>**ORDER** |

This matter is before the Court on Petitioner Nir B.'s ("Petitioner") First Amended Petition for Writ of Habeas Corpus. (ECF No. 12.) Respondents filed an opposition. (ECF No. 14.) Petitioner filed a reply. (ECF No. 15.) For the reasons set forth below, the Petition is DENIED.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from Petitioner's allegedly unlawful detention by federal immigration authorities. (ECF No. 12.) Petitioner is a noncitizen who entered this country on a B-2 nonimmigrant visitor visa on March 11, 2015, and remained beyond the period authorized by that document. (*Id.* at 7; ECF No. 6 at 34.) While in the United States, Petitioner suffered arrests for burglary and domestic battery, but the charges against him were dropped. (ECF No. 6 at 15–22.)[2] He filed applications to extend or change his nonimmigrant status, a special immigrant petition, an application to adjust status, and, through his wife (who is an American citizen), a visa petition, but these requests were denied. (ECF No. 12 at 13.)

U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner on December 2, 2025, after lodging an immigration detainer while he was being held at the Turner Guilford Knight Correctional Center in Miami-Dade County. (ECF No. 12 at 14.) Petitioner appeared for a custody hearing in immigration court on January 29, 2026, at which the immigration judge ("IJ") denied bond, finding Petitioner to be a danger to the community and a flight risk. (ECF No. 6 at 37–38.) After being transferred to the California City Correctional Center, on June 16, 2026, Petitioner received a second custody determination hearing, at which the IJ once again denied bond. (ECF No. 6 at 44–48.) He filed an appeal with the Board of Immigration Appeals ("BIA"), which remains pending. (ECF No. 12 at 15.)

On February 11, 2026, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Florida. (ECF No. 12-4 at 2.) Judge Aileen Cannon denied the petition on July 13, 2026. (*Id.*) Petitioner argued that the government's "interpretation of the INA is arbitrary, capricious, erroneous, and unconstitutional," which Judge Cannon interpreted as a Fifth Amendment Due Process Clause challenge. (ECF No. 12-4 at 3.) Based on the fact that he had received two bond hearings already, Judge Cannon found he had received adequate process and denied the petition. (*Id.*)

---

[2] "Petitioner also failed to pay a fine arising from a violation of a non-criminal Florida boating statute . . . leading to his arrest on November 30, 2025, pursuant to a bench warrant." (ECF No. 6 at 25.)

Petitioner filed a second petition for writ of habeas corpus in this Court on July 22, 2026. (ECF No. 1.) The Court appointed counsel for Petitioner, who filed an amended petition on August 14, 2026. (ECF No. 12.) Petitioner claims that, due to various flaws in the bond hearings he had been afforded, his continued detention violates the Fifth Amendment's Due Process Clause.

On August 20, 2026, an immigration judge ordered Petitioner removed.[3] Petitioner has until September 21, 2026, to appeal.

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

### A. Abuse of the Writ Doctrine

The common law "doctrine of abuse of the writ generally 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation omitted). A "successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a

[3] Automated Case Information, U.S. Department of Justice, Executive Office for Immigration Review, https://acis.eoir.justice.gov/en/caseInformation/.

fundamental miscarriage of justice would result from failure to entertain the claim." *Id.* The government bears the burden of pleading abuse of the writ and must do so with "clarity and particularity." *Id.*; *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). "The burden to disprove abuse then becomes petitioner's." *McCleskey*, 499 U.S. at 494.

In his first habeas petition, Petitioner challenged his detention under the INA as "arbitrary, capricious, erroneous, and unconstitutional." (ECF No. 12-4 at 3.) Judge Cannon construed this claim liberally as a pro se pleading alleging a violation of Petitioner's rights under the Fifth Amendment Due Process Clause and proceeded to analyze the claim both under substantive and procedural due process. (*Id.*) Judge Cannon held that Petitioner's procedural due process rights had not been violated because:

> Whatever is to be discerned as the exact baseline of Due Process in this circumstance, it is clear that Petitioner has been afforded more than adequate constitutional protection. Twice in 2026, pursuant to his requests for redetermination of custody, the Immigration Court examined his requests for release and determined, following a full review, that Petitioner is not entitled to release[.]

(ECF No. 12-4 at 5.) Similarly, she held that Petitioner's substantive due process rights had also not been violated because "to the degree it could be argued that a constitutional limit exists as to the length of pre-removal immigration detention in cases where no bond hearing has been afforded, the length of detention here has not crossed that line or otherwise offended due process." (*Id.* at 6.)

The First Amended Petition filed in this Court alleges violations of the Fifth Amendment Due Process Clause because the bond hearings afforded to Petitioner rested on legal error and abuse of discretion, and Petitioner has been subjected to prolonged detention. (ECF No. 12 at 18–30.)

In their opposition to the original[4] habeas petition, Respondents argue "the petition fails under the abuse-of-the-writ doctrine because it repeats claims that were or could have been raised

---

[4] Respondents have elected to "stand[] on [their] initial opposition papers filed July 24, 2026." (ECF No. 14.) Accordingly, the Court considers arguments raised in those papers.

earlier and shows neither cause and prejudice nor a fundamental miscarriage of justice if the new petition is rejected."[5]

The Court finds that Respondents have met their burden to plead abuse of the writ by identifying overlapping facts and claims between the first and second petitions. The burden therefore shifts to Petitioner to demonstrate either (1) cause and prejudice, or (2) miscarriage of justice.

Petitioner's First Amended Petition responds that "[t]he order of the United States District Court for the Southern District of Florida denying Petitioner's earlier *pro se* petition did not adjudicate the claims raised here." (ECF No. 12 at 11.) Petitioner asserts that his claims are distinct from those actually adjudicated in the prior habeas action because Judge Cannon's order "construed the *pro se* filing as a general Fifth Amendment challenge" rather than as a challenge to the validity of the immigration court's orders denying bond, which suffered from the errors identified above. (*Id.*) Petitioner avers that adjudication of the instant petition is further distinguishable from Judge Cannon's order because her ruling "was . . . expressly tied to the length of detention then before [her]" and Petitioner's ongoing detention "is a continuing and worsening injury." (*Id.*)

With respect to the alleged deficiency of the bond hearings, Petitioner argues these claims have not been actually adjudicated. He highlights Judge Cannon's statement that "It does not appear that Petitioner challenges the rulings issued by the Immigration Court denying his requests for bond, but if he is, the Court would lack jurisdiction over [that claim]." (ECF No. 12-4 at 5 n.4.) He argues that Judge Cannon "did not decide whether the allocation of the burden of proof comports with due process, whether unadjudicated arrests may establish dangerousness, or whether the custody determinations rested on legal error." (ECF No. 12 at 11.)

The Court agrees with Petitioner that, under Ninth Circuit precedent, this Court can

---

[5] Respondents also argue that "[c]laim preclusion applies because the present petition arises from the same transactional nucleus of facts, the prior judgment was on the merits, and the parties are the same." (ECF No. 6 at 3.) "The longstanding rule [is] that res judicata has no application in habeas corpus." *Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*, 163 F.3d 530, 537 (9th Cir. 1998), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003). Thus, claim preclusion does not bar Petitioner's claims.

review the IJs' determinations denying bond as mixed questions of law and fact. *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024). This Court is not bound by *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008), which Judge Cannon cited for the proposition that she lacked jurisdiction to entertain such a challenge. (ECF No. 12-4 at 5 n.4.)

To the extent Petitioner raises a general procedural or substantive due process challenge to his detention, the Court declines to re-adjudicate those claims pursuant to the abuse of the writ doctrine. However, the Court finds Petitioner's claims as to the deficiency of the bond hearings is not subject to dismissal under that doctrine. Finally, to the extent Petitioner raises claims relating to prolonged detention based upon the additional time that has passed between the filing of the first petition and the instant petition, that claim is also not barred by the abuse of the writ doctrine.

B. <u>Constitutional Claims Relating to Allegedly Deficient Bond Hearings</u>

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As the Court has found in numerous similar cases, Petitioner has a protected liberty interest in remaining free during the pendency of immigration proceedings which is affected by the government's decision to detain him. *See, e.g.*, *Carballo v. Andrews*, No. 1:25-CV-00978-

KES-EPG, 2025 WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025) (citing *Morrissey*, 408 U.S. at 482; *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Young v. Harper*, 520 U.S. 143, 147–49 (1997)) ("Even when a statute authorizes detention without a hearing, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute."); *see also Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). The Court balances this interest against the third *Mathews* factor: the government's interest in enforcing immigration laws and ensuring noncitizens appear at immigration proceedings and do not pose a danger to society. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).

With respect to the second factor — erroneous deprivation and whether additional procedures would have probative value —Petitioner alleges that he did not receive constitutionally compliant due process because his bond hearings were inadequate. (ECF No. 12 at 18–30.)

Because constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Martinez*, 124 F.4th at 783–84. Under an abuse of discretion standard, the court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Id.* (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision "'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

Here, both IJs found Petitioner to be a danger to the community and a flight risk and denied bond on the basis of Petitioner's arrests for burglary and domestic battery. (ECF Nos. 12-5, 12-6.) The first IJ to deny Petitioner bond described in detail the allegations against Petitioner, including that "[Petitioner] grabbed a phone charger and hit his wife multiple times on her back,

leaving welt marks," and that "[Petitioner] was arrested for another domestic violence incident in which the victim told police that he punched her approximately five times in the back of her head with a closed fist and pulled her hair." (ECF No. 12-5 at 3.)

Petitioner argues that it was error for the IJs to rely on arrests which did not result in convictions. (ECF No. 12 at 28–30.) However, immigration courts are permitted to consider arrests, and doing so does not violate due process. *Singh v. Holder*, 638 F.3d 1196, 1209 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281, (2018).

Petitioner further argues that the burden of proof should have been allocated to the government at these hearings and set at clear and convincing evidence. (ECF No. 12 at 26–27.) Given the serious and recent allegations of violence leveled against Petitioner, the extensive process already provided to him, and the record before the Court, the Court cannot conclude that shifting the burden prejudiced Petitioner or that "placing the burden of proof on the government was constitutionally necessary to minimize risk of error." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1212 (9th Cir. 2022) ("[Petitioner] has not alleged difficulty obtaining any piece of evidence, much less evidence that would be in the government's hands. Moreover, to the extent such information existed and [Petitioner] was unable to obtain it, § 1226(a)'s procedures would have allowed [Petitioner] to raise that fact for the IJ's consideration."); *Morrissey*, 408 U.S. at 481 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

Under these circumstances, where Petitioner has been heard as to these claims twice in immigration court, and once in federal district court, the Court finds that Petitioner received sufficient process and additional procedures would provide negligible probative value to safeguard against erroneous deprivation of liberty. Therefore, the Court denies Petitioner's due process claims as to inadequacy of his bond hearings.

C. Prolonged Detention

Finally, the Court rejects Petitioner's argument that his detention violates his due process rights because it has become prolonged. While "it has . . . never been clearly delineated in the context of immigration detention" when the length of detention results in a violation of the

detainee's substantive due process rights, it is "undisputed" that such a limit exists. *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023), *abrogated on other grounds by Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024) (quoting *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021)).

Petitioner has been detained for nine months during the pendency of his immigration proceedings. The Court recognizes that while Petitioner's detention may, at some point, cross a threshold and ripen into a substantive due process violation, it has not been crossed in the approximately two months between Judge Cannon's previous rejection of Petitioner's substantive due process claim and the First Amended Petition, particularly in light of Petitioner's recent order of removal. *See United States v. Briggs*, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit."); (ECF No. 12-4 at 6) (prior habeas order noting that "although [Petitioner's] total preremoval detention lies at about seventh [sic] months at this time, there is no basis in the record to conclude that his pre-removal detention is not reasonably necessary to secure his removal, that the executive branch has acted with unreasonable delay in connection with Petitioner's removal proceedings, or that, more generally, Petitioner's pre-removal detention otherwise offends the Due Process Clause.").

Accordingly, the Court denies, without prejudice, Petitioner's challenge to the length of his detention, with leave for him to raise that challenge again if his detention passes the constitutional limit.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The First Amended Petition for Writ of Habeas Corpus (ECF No. 12) is DENIED;
2. Petitioner's Motion for TRO (ECF No. 2) is DENIED as moot; and
3. The Clerk of the Court shall enter judgment and close this case.

///

///

///

IT IS SO ORDERED.

DATE: August 27, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE